Your Name:    STEPHEN MALLOY

Your Address:    1360 43RD AVE., SF, CA  94122

Phone Number:    310-428-7005

Email Address:    JOEJETJONES2014@GMAIL.COM

Pro Se Plaintiff

**FILED**

NOV 17 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN MALLOY | Case Number    [leave blank] |
|            Plaintiff, | **CV25**      **9885** IFP |
|     v. | **COMPLAINT** |
| CONSTELLIS - TRIPLE CANOPY | LJC |
|          Defendant. | DEMAND FOR JURY TRIAL |
| | Yes ☐     No ◼ |

## I.     PARTIES

1. Plaintiff. [Write your name, address, and phone number. Add a page for additional plaintiffs.]

Name:     STEPHEN MALLOY

Address:     1360 43RD AVE., SF, CA  94122

Telephone:     310-428-7005

2. Defendants. [Write each defendant's full name, address, and phone number.]

Defendant 1:

Name:     CONSTELLIS - TRIPLE CANOPY

Address:     13530 DULLES TECHNOLOGY DR., SUITE 500, HERNDON, VA  20171

Telephone:     866-349-1506

Defendant 2:

Name: _____

Address: _____

Telephone: _____

Defendant 3:

Name: _____

Address: _____

Telephone: _____

## II.    JURISDICTION

Usually only two types of cases can be filed in federal court, cases involving "federal questions" and cases involving "diversity of citizenship." Check at least one box.

3. My case belongs in federal court

☑ under <u>federal question jurisdiction</u> because it involves a federal law or right.

Which federal law or right is involved?
ADA 36.201(a); ADA 36.202(a); Section 504 Rehabilitation Act 29 U.S.C. 794; FTCA

☐ under <u>diversity jurisdiction</u> because none of the plaintiffs live in the same state as any of the defendants <u>and</u> the amount of damages is more than $75,000.

## III.    VENUE

The counties in this District are: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo, or Sonoma. If one of the venue options below applies to your case, this District Court is the correct place to file your lawsuit. Check the box for each venue option that applies.

4. Venue is appropriate in this Court because:

☑ a substantial part of the events I am suing about happened in this district.

☐ a substantial part of the property I am suing about is located in this district.

☐ I am suing the U.S. government, federal agency, or federal official in his or her official capacity <u>and</u> I live in this district.

COMPLAINT                              PAGE ___ OF ___                    JDC TEMPLATE, UPDATED 11/2024

☐ at least one defendant is located in this District and any other defendants are located in California.

## IV.    INTRADISTRICT ASSIGNMENT

This District has three divisions: (1) San Francisco/Oakland (2) San Jose; and (3) Eureka-McKinleyville.

First write in the county in which the events you are suing about happened, and then match it to the correct

division. The San Francisco/Oakland division covers Alameda, Contra Costa, Marin, Napa, San Francisco,

San Mateo, and Sonoma counties.  The San Jose division covers Monterey, San Benito, Santa Clara, Santa

Cruz counties.  The Eureka-McKinleyville division covers Del Norte, Humboldt, Lake, Mendocino

counties, only if all parties consent to a magistrate judge.

5.   Because this lawsuit arose in _SAN FRANCISCO_____ County, it should be assigned to the

_SAN FRANCISCO_____ Division of this Court.

## V.    STATEMENT OF FACTS

Write a short and simple description of the facts of your case. Include basic details such as <u>where</u> the events

happened, <u>when</u> things happened and <u>who</u> was involved. Put each fact into a separate, numbered paragraph,

**starting with paragraph number 6**. Use more pages as needed.

Jan. 24, 2023, ADA qualified, disabled Plaintiff Malloy & his Service Dog Ziggy unlawfully discriminated

against when they were interfered with and denied access to services and benefits at the Social Security

Office; located at the Federal Building, 90 7th Street., San Francisco, CA  94103.

See Exhibit 1.

Feb. 28, 2023 and March 9, 2023, respectively; Plaintiff timely filed complaints with DOJ and SSA.

Oct. 1, 2023 CRCL received complaint and found good cause to timely accept it.

June 4, 2024, DHS Office of Civil Rights and Civil Liberties determined that the guards discriminated

against Plaintiff and his Service Dog Ziggy.

Feb. 21, 2025 Plaintiff timely filed a Tort Complaint with DHS.

May 16, 2025 DHS issued a Right-to-Sue with 6 months.

Nov. 17, 2025 as Nov. 16 was a Sunday, Plaintiff files suit.

## VI.    CLAIMS

### First Claim

Name the law or right violated:

ADA 36.201(a) & ADA 36.202(a)

Name the defendants who violated it:

CONSTELLIS - TRIPLE CANOPY SECURITY

Explain briefly here what the law is, what each defendant did to violate it, and how you were harmed. You do not need to make legal arguments. You can refer to your statement of facts.

1/24/23 Constellis Security Guards discriminated against Plaintiff & his Service Dog Ziggy based on their disabilities and were unlawfully interfered-denied opportunity to participate/benefit from the services, facilities, privileges, advantages of the public Social Security Office.

COMPLAINT                                    PAGE ___ OF ___                        JDC TEMPLATE, UPDATED 11/2024

_____ Second _____ **Claim**

Name the law or right violated:

Section 504 Rehabilitation Act 29 U.S.C. 794

Name the defendants who violated it:

CONSTELLIS - TRIPLE CANOPY SECURITY

Explain briefly here what the law is, what each defendant did to violate it, and how you were harmed. You do not need to make legal arguments. You can refer to your statement of facts.

1/24/23 Constellis Security Guards discriminated against Plaintiff & his Service Dog Ziggy based on their disabilities and were unlawfully interfered-denied opportunity to participate/benefit from the services, facilities, privileges, advantages of the public Social Security Office.


THIRD CLAIM

LAW: FTCA

DEFENDANT: CONSTELLIS - TRIPLE CANOPY SECURITY

BRIEF: Defendant's intentional, negligent and unlawful actions caused Plaintiff disabilities to suffer duress

## VII.    DEMAND FOR RELIEF

State what you want the Court to do.  Depending on your claims, you may ask the Court to award you money or order the defendant to do something or stop doing something.  If you are asking for money, you can say how much you are asking for and why you should get that amount or describe the different kinds of harm caused by the defendant.

MAX CIVIL PENALTY ALLOWED BY LAW.

## VIII.    DEMAND FOR JURY TRIAL

Check this box if you want your case to be decided by a jury, instead of a judge, if allowed.

☐ Plaintiff demands a jury trial on all issues.

Respectfully submitted,

Date: 11/17/2025

Sign Name:

Print Name: STEPHEN MALLOY

COMPLAINT                                            PAGE ___ OF ___                          JDC TEMPLATE, UPDATED 11/2024

# EXHIBIT 1

*Office of the General Counsel*
**U.S. Department of Homeland Security**
Washington, DC 20528



**U.S. CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Stephen Malloy
2200 Jackson Street, #305
San Francisco, CA 94115

Re:     Administrative Claim – Stephen Malloy (847-FPS-25)

Dear Mr. Malloy:

Under the provisions of the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680, I have considered the administrative claim you filed with the U.S. Department of Homeland Security (DHS) on February 21, 2025. The claim alleges that on January 24, 2023, the security guards working at the Social Security Administration office located at 90 7th Street, San Francisco, California, unlawfully denied you entry into the building with your service animal. You base your claim on a June 4, 2024, DHS Office for Civil Rights and Civil Liberties determination that the guards discriminated against you in violation of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794). After careful consideration, the claim is denied.

The basis for the denial is threefold. First, the FTCA has a strict statute of limitations that requires the filing of an administrative claim within two years from the date of the occurrence of the alleged tort. 28 U.S.C. § 2401. Here, the incident occurred on January 24, 2023, and the administrative claim was not filed until February 21, 2025, more than two-years after the incident. Second, you provide as the sole basis for your claim a violation of the Rehabilitation Act which does not, in of itself, support a claim of negligence. Lastly, to the extent that the claim raises allegations of negligence on the part of the security guards, the government cannot be held liable under the FTCA for the negligent acts of an independent contractor. 28 U.S.C. § 2671.

If you are dissatisfied with this decision, you may file suit in an appropriate United States District Court not later than six months after the date of mailing of this letter. 28 U.S.C. § 2401(b).

Sincerely,
MICHAEL H
SALTALAMACHEA

Digitally signed by MICHAEL H
SALTALAMACHEA
Date: 2025.05.09 09:23:55 -04'00'

Michael H. Saltalamachea
Deputy Associate General Counsel for General Law

Case 3:25-cv-09885-LJC   Document 1   Filed 11/18/25   Page 9 of 21

 **Gmail**

Stephen M <joejetjones2014@gmail.com>

---

## Re: Your DHS Complaint_Complaint No. 007346-24-DHS

**Levi, Frank** <Frank.Levi@fps.dhs.gov>
To: "joejetjones2014@gmail.com" <joejetjones2014@gmail.com>
Cc: "ROBERTSON, JASON" <JASON.ROBERTSON@hq.dhs.gov>

Wed, Jul 2, 2025 at 6:49 AM

Mr. Malloy

The e-mail you sent to the Department of Homeland Security (DHS), Office of the General Counsel (OGC), was forwarded to me.  I had previously contacted you on February 27, 2025, when I sent you an e-mail acknowledging receipt of your tort claim.

The claim was denied on May 9, 2025, and a denial letter was mailed to you via certified mail on May 16, 2025.  It was delivered to the address provided on your claim on May 19, 2025.  (USPS Tracking No. 9589 0710 5270 0652 9655 63).  At the time the denial letter was mailed, the address used was the only one we had on record.  It appears that whoever the letter was delivered to did not forward it to your new address.  As such, I am attaching a copy of the claim denial letter.

The letter explains your right to file suit in federal court challenging the denial.  As stated in the letter, if you intend to file suit you must do so within six (6) months from the date the denial letter is mailed (which was May 16, 2025).  As such, **the deadline for filing suit under the FTCA is November 16, 2025**.

If you have any questions regarding the tort claim, please feel free to contact me by phone or e-mail.  If you have retained counsel in this matter, I will only be able to communicate with your attorney.

Frank R. Levi
Senior Attorney - Federal Protective Service

U.S. Department of Homeland Security

Office of the General Counsel, General Law Division

Administrative and Fiscal Law Branch

(771) 213-1043 (Teams-Office)

(202) 400-0885 (Cell)

frank.levi@fps.dhs.gov

This communication, along with any attachments, is covered by federal and state law governing electronic communications and may contain confidential and legally privileged information.  If you are not the intended recipient, any dissemination, distribution, use or copying of this message and any attachment is strictly prohibited.  If you received this message in error, please reply immediately and delete the message.  Thank you.

**From:** Stephen M <joejetjones2014@gmail.com>
**Sent:** Tuesday, July 1, 2025 6:56 PM
**To:** OGC <ogc@HQ.DHS.GOV>; Stephen M <joejetjones2014@gmail.com>
**Subject:** Re: Your DHS Complaint_Complaint No. 007346-24-DHS

**CAUTION:** This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact your component SOC with questions or concerns.

[Quoted text hidden]

 **Malloy Denial Letter (signed).pdf**
276K



*Office for Civil Rights and Civil Liberties*
**U.S. Department of Homeland Security**
Washington, DC 20528

June 4, 2024

*Via electronic mail*

Stephen Malloy
1495 7th Avenue, #25
San Francisco, CA 94122
POCDisabledVeteranAdvocate@gmail.com

      Re:    Complaint No. 007346-24-DHS

Dear Mr. Malloy:

On October 1, 2023, the U.S. Department of Homeland Security (DHS) Office for Civil Rights and Civil Liberties (CRCL) received allegations that Federal Protective Service (FPS) Protective Security Officers (PSOs) asked inappropriate questions about your reported service animal and did not permit you to access a Social Security Administration (SSA) building.

CRCL has jurisdiction over disability complaints concerning FPS under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, as amended ("Section 504").[1] Accordingly, we analyzed whether FPS violated Section 504 in not permitting you to access the building with your alleged service animal. CRCL has completed its investigation and concluded that FPS discriminated against you in violation of Section 504.

## I.    Background

On February 28, 2023, you filed a complaint with the U.S. Department of Justice (DOJ) regarding your encounter with FPS. DOJ then forwarded your complaint to the SSA. On March 9, 2023, you filed a complaint with SSA regarding the encounter. On May 31, 2023, SSA referred you to DHS. On October 1, 2023, CRCL received your complaint regarding your encounter with FPS-contracted PSOs at the SSA building. As part of our investigation, CRCL reviewed FPS's response to CRCL's request for information, documents related to the encounter, and FPS policy and guidance related to service animals. CRCL also communicated with you by telephone on February 9, 2024, and several

---

[1] The Secretary of Homeland Security, through DHS Delegation Number 19003, delegated responsibility for coordinating the enforcement of the Department's regulations issued pursuant to the requirements of Section 504 to the Officer for Civil Rights and Civil Liberties. 6 C.F.R. Part 15, *et seq.* For each complaint, the regulations require the Department to issue findings of fact, conclusions of law, a description of a remedy for each violation found, and a notice of the right to appeal to the Officer for Civil Rights and Civil Liberties. *See* 6 C.F.R. § 15.70(g)(1)(i)-(iii). On February 28, 2008, based on an earlier but similar delegation, the Officer for Civil Rights and Civil Liberties delegated the Section 504 responsibility to the Deputy Officer for Programs and Compliance, to allow an appeal to the Officer for Civil Rights and Civil Liberties, as provided for in the regulations. *See* DHS Delegation No. 19001. Additionally, DHS Management Directive Number 065-01 establishes policy and implementation mechanisms for ensuring nondiscrimination for individuals with disabilities served by DHS-conducted programs and activities under Section 504.

times by email, including on March 20, 2024, when you provided CRCL with information about your reported disability and service dog.

## II.    Findings of Fact

According to a letter from a licensed psychiatrist from the Department of Veteran Affairs (VA), you have been diagnosed with post-traumatic stress disorder (PTSD). You have a dog that has been trained to assist you through interruption and movement tasks when your PTSD is triggered by preventing you from exhibiting certain behaviors towards yourself and others.

On the afternoon of January 24, 2023, you entered the SSA building located at 90 7th Street, San Francisco, California 94103 with your dog. When you arrived at security near the building entrance, you encountered a PSO who asked whether your dog was a service dog and you replied "yes."

After being asked to step aside, you encountered another PSO, who identified himself as a supervisor. The second PSO informed you that you could not access the SSA office because service dogs without documentation are not allowed in the building. In response, you told the PSO that it was illegal for him to ask for documentation and that your dog was trained to support your PTSD. The PSO then stated that "PTSD dogs" are not permitted as they are considered emotional support animals.

In response to CRCL's inquiries about the encounter, FPS did not deny the complaint's allegations and indicated that there had been a previous incident involving a service animal and the same PSO. FPS also indicated that it interviewed two other PSOs who may have witnessed the encounter with you, but the officers did not recall the incident.

The Code of Federal Regulations (CFR), which sets forth the rules and regulations governing conduct on federal property, states the following, "No person may bring dogs or other animals on Federal property for other than official purposes. However, a disabled person may bring a seeing-eye dog, a guide dog, or other animal assisting or being trained to assist that individual."[2] The *FPS Protective Security Officer SMART Book*, which applies to FPS-contracted PSOs and is a security manual and resource tool for PSOs, quotes the above statement from the CFR in its section on processing individuals with service animals. The *SMART Book* provides several examples of tasks performed by service animals, including calming a person with PTSD during an anxiety attack. The *SMART Book* also states that, "[a]n individual with a disability shall be permitted to be accompanied by a service animal in all areas of the facility where members of the public, participants in services, programs or activities, or invitees, as relevant, are permitted."

The *SMART Book* also provides guidance on the appropriate scope of inquiry when it is not readily apparent to the PSO that an animal accompanying an individual is a service animal. In those situations, the PSO should limit questions to the following: **Question**: *Is the animal a service animal*

---

[2] Federal Management Regulation Title 41, Code of Federal Regulations, Part 102-74, Subpart C, *Rules and Regulations Governing Conduct on Federal Property,* November 2005. https://www.dhs.gov/fps-visitors and https://www.ecfr.gov/current/title-41/section-102-74.425.

2

*required because of a disability?*[3] The *SMART Book* further explains that PSOs should not: ask about an individual's disability; require documentation that the animal is a service animal; or ask that the animal demonstrate its ability to perform the specified work or task.

## III.    Conclusions of Law

As a preliminary matter, the complaint was timely filed. Your encounter with FPS was on January 24, 2023, and you filed complaints with the DOJ and SSA on February 28, 2023, and March 9, 2023, respectively. On October 1, 2023, CRCL received your complete complaint.[4] While CRCL received your complaint more than 180 days after the last alleged act of discrimination, CRCL finds good cause to extend the filing period given that you filed complaints with other federal agencies within the 180-day filing period.[5] Therefore, the complaint was timely.

Section 504 provides that "no otherwise qualified individual with a disability in the United States shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance or conducted by any Executive agency." The Department's implementing regulation states: "No qualified individual with a disability in the United States, shall, *by reason of his or her disability*, be excluded from the participation in, be denied benefits of, or otherwise be subjected to discrimination under any program or activity conducted by the Department." 6 C.F.R. § 15.30(a) (emphasis added).

To establish a *prima facie* case of disability discrimination under the Rehabilitation Act, an individual must demonstrate that:

(1) he or she is an individual with a disability under the Act;
(2) he or she would be "otherwise qualified" to participate in the program;
(3) the program receives federal financial assistance, or is a federal agency; and
(4) the program has discriminated against the individual.

*See, generally, McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004). For the reasons stated below, you meet each of the requirements necessary to establish a *prima facie* case.

### A. You are an individual with a disability.

The Department's implementing regulation defines an individual with a disability as any person who has a physical or mental impairment that substantially limits one or more of the individual's major life activities, has a record of such impairment, or is regarded as having such an impairment. 6

---

[3] According to DOJ, DHS personnel are limited to asking two specific questions in situations where it is not obvious that a dog is a service animal. Those questions are: (1) Is the dog a service animal required because of a disability? (2) What work or task has the dog been trained to perform? U.S. Department of Justice, *ADA Requirements: Service Animals*, ADA Requirements: Service Animals | ADA.gov, (last updated February 28, 2020).

[4] A complete complaint is a "written statement that contains the complainant's name and address and describes the Department's alleged discriminatory action in sufficient detail to inform the Department of the nature and date of the alleged violation of section 504." 6 C.F.R. § 15.3(b).

[5] "All complete complaints must be filed within 180 days of the alleged act of discrimination. The Department may extend this time period for good cause." 6 C.F.R. § 15.70(d)(3).

C.F.R. § 15.3(d). Based on your PTSD diagnosis, we conclude that you are an individual with a disability.

*B. You are "otherwise qualified" to participate in services you sought from FPS.*

Under existing precedent, an "otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *See Southeastern Community College v. Davis,* 442 US. 397, 406 (1979). The Department does not dispute that you meet all the qualifications to participate in the activities and programs of FPS, including entering a federal building to access the SSA.

*C. FPS is a covered federal entity.*

FPS, as part of DHS, is subject to Section 504. 6 C.F.R. § 15.1 ("The provisions established by this part shall be effective for all components of the Department, including all Department components that are transferred to the Department.") Further, protecting federal government facilities is a covered program or activity. The federal courts have broadly defined a "program or activity" as encompassing the normal functions of a governmental entity –"encompass[ing] virtually everything that a public entity does." *Johnson v. City of Saline,* 151 F.3d 564, 569-70 (6th Cir. 1998); *see also Bay Area Addiction Research and Treatment, Inc. v. City of Antioch,* 179 F.3d 725, 731 (9th Cir. 1999) (*quoting Innovative Health Systems, Inc. v. City of White Plains,* 117 F.3d 37, 44 (2d Cir. 1997)). The security inspection process at a federal facility is a program or activity of FPS, and thereby implicates the requirements of Section 504.

*D. FPS discriminated against you.*

Based on your allegation that FPS denied your reasonable modification request to access the building with your service animal, we find that FPS discriminated against you on the basis of disability.

1. <u>FPS was aware that you had a disability.</u>

Under the Americans with Disabilities Act (ADA), an individual seeking a reasonable modification is generally expected to provide an entity with notice of the disability, unless that disability is obvious.[6] *See, e.g., Robertson v. Las Animas County Sheriff's Dep't.,* 500 F.3d 1185, 1197 (10th Cir. 2007) (holding that an "entity must have knowledge that an individual's disability limits her ability to participate in or receive the benefits of its services... [which] may derive from an individual's request for an accommodation ... [or] because it is 'obvious'") (quoting *Kiman v. New Hampshire Dept. of Corr.,* 451 F.3d 274, 283 (1st Cir. 2006) (holding "sometimes the [person]'s need for an accommodation will be obvious")); *accord Duvall v. County of Kitsap,* 260 F.3d 1124 (9th Cir. 2001) (holding "[w]hen the plaintiff has alerted the public entity to his need for accommodation (or

---

[6] Courts analyze similarly the rights and obligations created under the Rehabilitation Act and Title II of the ADA. *See, e.g., Hainze v. Richards,* 207 F.3d 795, 799 (5th Cir. 2000) ("[Title II of the ADA] specifically provides that '[t]he remedies, procedures and rights" available under Section 504 shall be the same as those available under Title II. Jurisprudence interpreting either section is applicable to both."); *Vos v. City of Newport Beach,* 892 F.3d 1024, 1036 (9th Cir. 2018)("We, like the district court, analyze the Parents' ADA and Rehabilitation Act claims together because the statutes provide identical "remedies, procedures and rights.").

4

where the need for accommodation is obvious…), the public entity is on notice that an accommodation is required").

FPS was aware of your disability because you informed the PSO several times throughout your encounter. Therefore, FPS was on notice of your disability.

### 2. Your dog is a service animal.

DOJ provides guidance about the term "service animal" and other service animal provisions in the regulations implementing the ADA. DOJ defines qualified service animals "as dogs that are individually trained to do work or perform tasks for people with disabilities."[7] However, DOJ limits this definition, explaining that "[d]ogs whose sole function is to provide comfort or emotional support do not qualify as service animals under the ADA."[8]

Based on the letter you provided from the VA psychiatrist, the information you provided to CRCL regarding your dog's training, and your representations to FPS during your encounter, CRCL concludes that your dog is a service animal.

### 3. The PSO asked impermissible questions regarding your service animal.

When it is not readily apparent to a PSO that an animal accompanying an individual is a service animal, the *PSO SMART Book* provides that the PSO should limit questions regarding the animal to the following: **Question**: *Is the animal a service animal required because of a disability?* Further, DHS personnel cannot ask about the person's disability, require medical documentation, or require a special identification card or training documentation for the dog.

Therefore, when the PSO asked you to provide documentation that your dog is a service animal after you confirmed the animal was a service animal for a disability, he exceeded the scope of permissible lines of questioning regarding your dog.

### 4. FPS did not provide you with a reasonable modification.

The Rehabilitation Act requires FPS programs and activities to be meaningfully accessible to individuals with disabilities who are otherwise eligible to participate in them. As the Supreme Court further explained in *Alexander v. Choate*, 469 U.S. 287, 301 (1985), providing "meaningful access" to a federal program may require that the government make a "reasonable accommodation" or modification to make its services, programs, and activities, accessible to people with disabilities. for an individual's disability. As further described in the DHS regulations, an accommodation or modification would not be reasonable if it required a "fundamental alteration in the nature of a program or activity or an undue financial and administrative burdens."[9]

CRCL concludes that your request to enter the SSA building with your service animal was reasonable in that you informed PSOs that your dog was a service animal trained to support your

---

[7] U.S. Department of Justice, *ADA Requirements: Service Animals*, ADA Requirements: Service Animals | ADA.gov, (last updated February 28, 2020).
[8] *Id.*
[9] 6 C.F.R. § 15.50(a), (a)(2).

5

disability, and there is no evidence that the ADA requirements for asking a service animal to leave were met - that your dog was out of control or not housebroken.[10]

Furthermore, permitting you to enter the premises with your service dog would not have posed an undue financial or administrative burden, or fundamental alteration of policy, as the Code of Federal Regulations explicitly permit services animals.

Finally, in response to CRCL's inquiries about the encounter, FPS did not deny the complaint's allegations and indicated that there had been a previous incident involving a service animal and the same PSO.

Accordingly, CRCL finds that FPS discriminated against you in violation of Section 504 when it asked impermissible questions about your service dog and would not permit you access to the SSA building with your service dog.

## IV.    Remedy

Accordingly, and pursuant to CRCL's authority under 6 C.F.R. §15.70(g)(1)(ii), CRCL orders the following remedy:

> FPS shall disseminate a memorandum to all PSO vendors reiterating the importance of following the protocol in the *Protective Security Officer SMART Book* for screening visitors who are accompanied by service animals.

## V.    Right to Appeal

You may appeal these findings of fact, conclusions of law, or remedies. Such an appeal must be filed with the Officer for Civil Rights and Civil Liberties at the address below within 60 days after receipt of this letter. A timely appeal shall be reviewed by the Officer for Civil Rights and Civil Liberties who will issue the final agency decision in this matter. 6 C.F.R. § 15.70(h).

The Notice of Appeal should be sent by email or mail to the Officer at the following addresses:

> Email: CRCLOfficer@hq.dhs.gov
>
> Mail:  U.S. Department of Homeland Security
> Officer for Civil Rights and Civil Liberties
> 2707 Martin Luther King Jr. Ave. SE
> Mail Stop 0190
> Washington, DC 20528-0190

---

[10] A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. U.S. Department of Justice, *ADA Requirements: Service Animals*, ADA Requirements: Service Animals | ADA.gov.

6

This letter brings our investigation to a conclusion. If you do not appeal the Section 504 findings, legal conclusions or remedy set out herein to the Officer within 60 days, we will close your complaint. Thank you for your cooperation during our investigation of your complaint.

Sincerely,

Peter E. Mina
Deputy Officer for Programs and Compliance
Office for Civil Rights and Civil Liberties
U.S. Department of Homeland Security

7

# STATUTORY AUTHORITY

## § 36.202 Activities.

(a) *Denial of participation*. A public accommodation shall not subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation. (b) *Participation in unequal benefit*. A public accommodation shall not afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals. (c) *Separate benefit*. A public accommodation shall not provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others. (d) *Individual or class of individuals*. For purposes of paragraphs (a) through (c) of this section, the term "individual or class of individuals" refers to the clients or customers of the public accommodation that enters into the contractual, licensing, or other arrangement.

## § 36.201 General.

(a) *Prohibition of discrimination.* No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation.

(b) *Landlord and tenant responsibilities.* Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part. As between the parties, allocation of responsibility for complying with the obligations of this part may be determined by lease or other contract.

(c) *Claims of no disability.* Nothing in this part shall provide the basis for a claim that an individual without a disability was subject to discrimination because of a lack of disability, including a claim that an individual with a disability was granted a reasonable modification that was denied to an individual without a disability.

Case 3:25-cv-09885-LJC　　Document 1　　Filed 11/18/25　　Page 21 of 21



# ADA.gov

**U.S. Department of Justice**
**Civil Rights Division**

# Americans with Disabilities Act Title III Regulations

March 08, 2012

### 🔨 Law, Regulations, & Standards

Read this document to understand your legal rights or responsibilities under the ADA.

For a beginner-level introduction to a topic, view Topics
For more detailed information on a topic, view Guidance & Resource materials

**Title III Regulations Supplementary Information**

**DEPARTMENT OF JUSTICE**

**28 CFR Part 36**

**[CRT Docket No. 106; AG Order No. 3181-2010]**